IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 1:19-cr-00457-RAH-SRW-3 |
| | ) | |
| CORNELIUS THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION[1]

**I.     Introduction**

On January 21, 2021, Defendant Cornelius Thomas entered a plea of guilty to a charge of conspiracy with intent to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846.[2] (Docs. 160-162). Pursuant to 21 U.S.C. § 853, the government filed a motion for preliminary forfeiture of a truck included in Forfeiture Allegation 1 of the superseding indictment (Doc. 37, at 5-6)—specifically, a 2015 Chevrolet Silverado 1500 truck bearing vehicle identification number 3GCPCREC6FG410660. (Doc. 163). The court granted the government's motion. (Doc. 171). The government subsequently provided Christina Thomas—Cornelius Thomas' sister—notice of forfeiture as a possible interested third party. (Doc. 200).

On March 29, 2021, Petitioner Christina Thomas timely filed her Petition by Third Party for Return of Confiscated Property (Doc. 203), contending that her father gave her the vehicle, that

---

[1] District Judge R. Austin Huffaker, Jr., referred the motion for return of confiscated property (Doc. 203) to the undersigned for further proceedings and a determination or recommendation as may be appropriate. (Doc. 221).

[2] On January 21, 2021, the Defendant consented to enter his guilty plea before the United States Magistrate Judge.

the title of the vehicle was in her name, and that she had a right to the property superior to that of the Defendant. The government filed a response (Doc. 205) maintaining that, although the vehicle is registered in the Petitioner's name, the Petitioner is merely a nominee with no legal ownership interest in the vehicle. On May 25, 2021, the court conducted a hearing to determine whether the Petitioner has standing to seek return of the confiscated property. (Doc. 223). After the parties presented their evidence and arguments, the court continued the hearing until June 10, 2021, to allow further testimony. (Doc. 226). On June 10, 2021, the court heard additional testimony and argument by the parties. (Doc. 228).

For the reasons set forth below, the court concludes that the Petitioner's motion is due to be denied.

## II.  Applicable Law

"Forfeiture under § 853 applies to 'any person' convicted of certain serious drug crimes." *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017). Section 853(a) mandates that a defendant, once convicted, shall forfeit "(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;" and "(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." 21 U.S.C. § 853(a)(1), (2). "All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under [§ 853]." 21 U.S.C. § 853(c).

Following the entry of a preliminary order of forfeiture, "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States," may petition the court for a hearing to adjudicate the validity of a third party's alleged interest in the property. 21 U.S.C. § 853(n)(2). "If a third party files a petition asserting an interest in the property as prescribed by statute, the court must conduct an ancillary proceeding." *United*

*States v. Chavous*, 654 F. App'x 998, 1000 (11th Cir. 2016). "An ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property." *United States v. Davenport*, 668 F.3d 1316, 1320 (11th Cir. 2012). "[T]he ancillary proceeding for third-party claimants 'does not involve relitigation of the forfeitability of the property,' which has already been ordered in the criminal case. The ancillary proceeding is only for the purpose of determining 'whether any third party has a legal interest in the forfeited property.'" *Id*. at 1321 (quoting Fed. R. Crim. P. 32.2, advisory committee's note (2000 Adoption)). "Although it occurs in the context of criminal forfeiture, the ancillary proceeding is civil in nature." *United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir.), *cert. denied*, 140 S. Ct. 526 (2019). The Federal Rules of Evidence apply to the ancillary proceeding. Fed. R. Crim. P. 32.2 (Advisory Committee's note) (2000 adoption).

At the ancillary hearing, "the third party must establish that he has standing within the meaning of section 853 by 'asserting a legal interest' in the property. He must then show his entitlement to relief on the merits by establishing . . . that the order of forfeiture is invalid" under one of the provisions of 21 U.S.C. § 853(n)(6). *United States v. Catala*, 870 F.3d 6, 9 (1st Cir. 2017) (citations omitted); *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015) ("At the hearing, the petitioner must first establish his standing to challenge the forfeiture order by demonstrating a 'legal interest' in the forfeited property under § 853(n)(2). The petitioner must then prove his entitlement to relief on the merits by establishing, through a preponderance of the evidence, one of two superior claims to the property under § 853(n)(6).") (citations omitted); *but see United States v. Timley*, 507 F.3d 1125, 1129-30 (8th Cir. 2007) ("Because a legal interest is required to bring a claim under 21 U.S.C. § 853(n)(2), a court must first look to the law of the jurisdiction that created the property right to determine whether the claimant has a valid interest. . . . If a court determines the claimant has an interest in the property under the law of the jurisdiction

that created the property right, then at the ancillary hearing, it must next look to federal law, *i.e.*, to 21 U.S.C. § 853(n)(6), to determine if the claimant will prevail in the ancillary proceeding.") (citation omitted).[3] To prevail on the merits, the petitioner must establish by a preponderance of the evidence the following:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6).

In determining whether the petitioner has satisfied this burden of proof, the court must consider the evidence and testimony presented by the parties at the hearing, as well as "the relevant portions of the record of the criminal case which resulted in the order of forfeiture." 21 U.S.C. § 853(n)(5). "If, after the hearing, the court determines that the petitioner has" met the petitioner's burden, "the court shall amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6). A court "looks to state law to determine the nature of a petitioner's interest in the property, but federal law determines whether the petitioner's interest in the forfeited property is superior and requires an amendment to the forfeiture order." *United States v. Tardon*, 493 F.

---

[3] *See Timley*, 507 F.3d at 1130 n.2 (explaining that "[m]any courts have conflated § 853(n)(2) with § 853(n)(6). This is incorrect, as § 853(n)(6), by its language 'after the hearing,' assumes that a claimant has standing to petition for an ancillary hearing. A more accurate reading treats § 853(n)(2) as requiring an initial showing of a 'legal interest' to obtain an ancillary hearing and § 853(n)(6) as requiring a showing of a 'superior legal interest' to prevail at the hearing."); *but see United States v. Henry*, 621 F. App'x 968, 972 (11th Cir. 2015) ("We have explained district judges '*cannot* decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but *must* hold an evidentiary hearing.'") (emphasis in original).

Supp. 3d 1188, 1208 (S.D. Fla. 2020); *see United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007) ("While state law defines the property interests a defendant has, federal law determines whether those property interests are forfeitable for the commission of a federal crime.").

### III. Factual Record

#### A. Testimony of Christina Thomas

As noted above, Petitioner Christina Thomas is the sister of Defendant Cornelius Thomas. At the evidentiary hearing, she testified that she found the Chevrolet Silverado 1500 truck online and contacted the seller by telephone. According to the Petitioner, she went to the seller's address to look at the truck before purchasing it. The Petitioner testified that she brought the Defendant with her to inspect the vehicle because she had no mechanical knowledge, but no one else accompanied them to inspect the vehicle. A bill of sale executed on April 2, 2019 states that the Petitioner purchased the truck for $22,700. Petitioner's Exhibit 1. According to the Petitioner, her father, L. C. Thomas, had agreed to finance the truck for her, and the Petitioner was to pay him "what she could, when she could." She testified that the Defendant was present with the Petitioner at the time of the purchase of the vehicle, and he delivered the $22,700 to the seller, although the bill of sale listed the Petitioner as the purchaser. The Petitioner said that she put her parents' address on the bill of sale, rather than her own, because she typically used that address for important documents since she was renting and did not want any important documents being sent to a temporary address. The Defendant was living at their parents' address.

The title of the truck was in the Petitioner's name, and the Petitioner testified that she herself registered the truck. The Petitioner testified that she also paid for the truck's insurance up until its seizure by the Government. The Petitioner said that she had the truck for around five months before she returned it to her father. She said that she made cash payments during that period to her father for a total of approximately $1,000. The Petitioner did not receive any receipts

5

for her payments, but said she believed that her father kept a record of those payments, although she did not know where he kept it.

The Petitioner testified that because the maintenance, gas and insurance for the truck were more expensive than she realized, she could not, at that time, afford to keep it. She said that during those five months, she and her then-boyfriend were the ones who drove the truck. She has an additional car, a Hyundai Elantra, that she and her daughter currently drive. The Petitioner testified that when she returned the truck to her father, her understanding was that he was going to use the truck; however, her father mostly used his other truck. According to the petitioner, after she returned the truck she stopped making payments on it, although she continued to pay the insurance. The title also continued in the Petitioner's name. The Petitioner testified that she intended to get the truck back from her father once she was able to afford it and start paying on it again. The Petitioner's father died in February 2021, and she testified that she seeks to reclaim the truck from the government because the truck represents her last connection to her father. She said that she believes herself to be the true owner of the truck.

### B.    Testimony of Cory Kroeger

Special Agent Cory Kroeger of the Drug Enforcement Administration testified that on January 9, 2020, Defendant Cornelius Thomas was arrested while driving the vehicle in question. At that time, Kroeger presented the Defendant with a statement of rights form that advised him of his *Miranda* rights. The Defendant was also orally advised of his rights. The Defendant signed the form and agreed to be interviewed by Kroeger. According to Kroeger, the Defendant stated that he owned the 2015 Chevrolet Silverado 1500 truck and that he paid approximately $20,000 in cash for it. Kroeger testified that when the Defendant was asked why he had the truck registered in his sister's name, he answered that the paperwork was confusing to him and it was easier to register the truck in her name. The Defendant told Kroeger that he had an eighth-grade education.

According to Kroger, the Defendant never stated that the truck was the Petitioner's or that it was purchased for her.

Kroeger also testified that he had gained prior knowledge of the Defendant's purchase of the truck from a confidential source or "source of information" (SOI) who had alerted Kroeger to the purchase before it occurred. The SOI had provided credible and accurate information to law enforcement as part of the criminal investigation into the drug trafficking activity in which the Defendant was a participant. The information given to Kroeger was that the Defendant paid approximately $22,500 to purchase the truck, and that the male SOI was present with the Defendant when the Defendant looked at the truck to see if there were any mechanical issues. Kroeger testified that his understanding from the SOI was that drug proceeds were going to be used to purchase the vehicle. Kroeger did not know whether the Petitioner was present at the time of the purchase of the truck.

Agent Kroeger testified that there was no documentation from criminal investigators that showed that the Petitioner used the vehicle during the time in which she claimed that the truck was in her possession. Kroeger testified that the majority of the criminal investigation was between March 2019 through November 2019. During that time, officers conducted surveillance on the truck and observed the Defendant driving the truck on a few occasions, but neither Kroeger nor any of the other officers observed the Petitioner driving the truck. Kroeger also did not ever see the Petitioner's father drive the truck. Although he was unable to provide specific dates, Kroeger testified that on one occasion, the Defendant was observed driving the truck over to the Petitioner's apartment and picking up a male who exited the apartment. On another occasion, the Defendant was observed driving to a school and picking up a juvenile. Kroeger also testified that prior to September 2019, criminal investigators conducted controlled purchases with confidential sources and that the truck in question was observed parked at Defendant's parents' residence during those

7

controlled purchases.

Lastly, Agent Kroeger testified that he had viewed video evidence from January 8, 2020, in which he observed the Defendant showing drugs to a corroborating source and removing the drugs either from the truck at issue or from somewhere in close proximity to the truck. The Defendant was the driver of the truck and was the one who unlocked the truck. Kroeger testified that, in the video, the drugs appeared to be inside the truck.

### C. Testimony of Jared Torres

Jared Torres testified that he originally owned the 2015 Chevrolet Silverado 1500 truck, but was not involved in the sale of the truck. He gave his wife, Mireyah Torres, authority to sell the truck, and Mireyah signed the bill of sale (Petitioner's Exhibit 1) in her husband's name. Jared Torres was not present during the sale of the truck.

### D. Testimony of Mireyah Torres

Mireyah Torres testified that she posted the 2015 Chevrolet Silverado 1500 truck for sale on *Facebook Market*, and the Petitioner contacted her via *Facebook* messaging to inquire about the truck. Based on that conversation, Ms. Torres believed that the Defendant was the one who was going to view the truck for purchase. The following day, the Defendant and two other men showed up at the Torres's house to look at the truck. Ms. Torres testified that the Defendant told her that he had been looking for a work truck, and they agreed on a purchase price of $20,700. The next day, the Defendant and a woman, Helen Maynor, met Ms. Torres at Wells Fargo to purchase the truck. The Defendant gave Ms. Torres $20,700 in cash. Ms. Torres executed a promissory note, dated March 14, 2019, which states as follows:

> I Mireyah Torres sold a 2015 Chevy Silverado 1500 for $20,700 to Cornelius Thomas. Once the title to the vehicle is received via mail, I Mireyah Torres will sign the title to Mr. Thomas. There will be insurance through State Farm until the title is signed and given to Mr. Thomas.

Government's Exhibit 2. Signatories to the promissory note were Ms. Torres, the Defendant, and

Helen Maynor. *Id*. The Defendant took possession of the truck that day. Ms. Torres testified that she believed she was selling the truck to the Defendant because he was the only person she communicated with after he met her in person to look at the truck.

About two days later, Ms. Torres contacted the Defendant to inform him that she had Chevrolet dealership maintenance coupons and some other paperwork related to the truck and asked him if he wanted them. The Defendant subsequently drove alone to her house and retrieved the coupons and paperwork.

After she received the title of the truck, Ms. Torres messaged the Defendant to let him know that she had it. The Defendant came to the Torres's house, along with the Petitioner. Ms. Torres presented a bill of sale and the title to the Defendant. The Defendant stated that the Petitioner was going to register the vehicle in her name, and the Petitioner subsequently signed the bill of sale.[4] Ms. Torres testified that she had not had any dealings with the Petitioner after the Petitioner initially contacted her through *Facebook,* and she believed that she was selling the truck to the Defendant even though the Petitioner signed the bill of sale.

### IV. Analysis

#### A. Standing

Standing is a "'threshold question in every federal case, determining the power of the court to entertain the suit.'" *United States v. Nine Hundred Sixty Thousand Dollars in U.S. Currency*, 307 F. App'x 251, 255 (11th Cir. 2006) (citation omitted). Standing has three elements:

> (1) the party claiming standing must have suffered an "injury in fact," an invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be some causal connection between the injury and the complained-of conduct; and (3) it must be likely, not just speculative, the injury will be redressed by a favorable decision.

---

[4] On the bill of sale, the purchase price of the truck is listed as $22,700, while the promissory note listed the purchase price as $20,700. Ms. Torres indicated that the $22,700 figure was written accidentally.

*United States v. Henry*, 621 F. App'x 968, 972 (11th Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If a petitioner lacks standing, a court need not address the petitioner's substantive arguments. *United States v. Masilotti*, 510 F. App'x 809, 810 n.2 (11th Cir. 2013).

"Standing in forfeiture cases has 'both constitutional and statutory aspects.'" *Timley*, 507 F.3d at 1129 (quotation omitted). "Constitutional standing, also referred to as Article III standing, requires a petitioner to establish an 'injury-in-fact' that is connected to the complained-of conduct, and to show that such injury is likely to be redressed by a favorable decision." *Tardon*, 493 F. Supp. 3d at 1234. "Because Article III standing is a sine qua non to federal judicial involvement, a federal court must resolve any doubts about such standing before proceeding to adjudicate the merits of a given case." *Catala*, 870 F.3d at 9. This requirement "applies even when neither party has raised the issue." *Id*. at 10. "At its core, Article III standing requires the existence of injury, not ownership." *Henry*, 621 F. App'x at 972. A petitioner need not own the property; a lesser property interest, such as a possessory interest, is enough for standing. *Id*.; *see Amodeo*, 916 F.3d at 971 ("To establish standing in a forfeiture proceeding, we have looked to whether the litigant has an interest in the property subject to the forfeiture because, absent an interest in that property, there is no case or controversy."). "'Ownership may be established by proof of actual possession, control, title, and financial stake.' 'It is well settled that a bare assertion of ownership in the property, without more, is not enough to prove an ownership interest sufficient to establish standing.'" *United States v. $11,320.00 in U.S. Currency*, 880 F. Supp. 2d 1310, 1323 (N.D. Ga. 2012) (citations omitted); *see also United States v. Coffman*, 612 F. App'x 278, 286 (6th Cir. 2015) ("Bare legal title . . . 'in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture.'") (citation omitted). "[A]t an evidentiary hearing, . . . a third-party petitioner must

demonstrate, by a preponderance, '*primary* dominion or control' over the property to establish standing." *Tardon*, 493 F. Supp. 3d at 1213, 1235 (quoting *Coffman*, 612 F. App'x at 286 (emphasis added in *Tardon*)).

"Courts have repeatedly cautioned against confusing the constitutional standing inquiry with the determination on the merits of the forfeiture action. The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices." *De Saro v. United States*, 173 F. App'x 760, 764 (11th Cir. 2006); *see also United States v. Emor*, 785 F.3d 671, 676 (D.C. Cir. 2015) ("'[T]he requirements for a [petitioner] to demonstrate constitutional standing [to challenge a forfeiture] are very forgiving.'") (citation omitted and alterations in original). However, "[t]he important phrase is 'colorable claim on the property,' as not just any purported injury or interest is sufficient." *United States v. One 2005 Dodge Magnum*, 845 F. Supp. 2d 1361, 1367 (N.D. Ga. 2012) (citing *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 n.5 (11th Cir. 2006)). For instance, "[n]ominees, or 'straw owners,' do not 'necessarily suffer an injury that is sufficient to demonstrate standing.'" *Id*. (citation omitted). "This is so because 'people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.... In short, courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else.'" *Coffman*, 612 F. App'x at 286 (quoting *United States v. Carrell*, 252 F.3d 1193, 1204 (11th Cir. 2001)); *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) ("[W]hile ownership and possession generally may provide evidence of standing, it is the injury to the party seeking standing that remains the ultimate focus. It is because of the lack of proven injury that we have, for example, denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for somebody else. Such owners do not themselves suffer an injury when the property is taken."). "[T]he purpose of forfeiture statutes is to 'deprive criminals of the

tools by which they conduct their illegal activities.... A failure to look beyond bare legal title would foster manipulation of nominal ownership to frustrate this intent.'" *United States v. Henry*, 64 F.3d 664, No. 94-6188, 1995 WL 478635, at *2 (6th Cir. 1995) (quoting *United States v. Premises Known as 526 Liscum Drive, Dayton, Montgomery Cty., Ohio*, 866 F.2d 213, 217 (6th Cir. 1989)).

Moreover, "a person found to be acting as a nominee for others whose property is subject to forfeiture cannot have a vested interest in the property." *Henry*, 621 F. App'x at 972. "Nominee 'connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in, or ownership of, the rights of the person nominating him.'" *United States v. Weiss*, 467 F.3d 1300, 1303 n.1 (11th Cir. 2006) (citation omitted).

As to statutory standing, 21 U.S.C. § 853(n)(2) requires that "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Thus, "Section 853(n)(2) requires the claimant to show that he is someone 'other than the defendant,'" and also that "he has a 'legal interest' in the property." *Tardon*, 493 F. Supp. 3d at 1209 (citations omitted). "If a third party has no legal interest in the property, then it lacks statutory standing to file a petition in the forfeiture action." *United States v. Lazare Kaplan Int'l Inc.*, No. 20-13048, 2021 WL 2374822, at *1 (11th Cir. June 10, 2021) (citing 21 U.S.C. § 853(n)(2)). "Legal interest" "encompasses only legally protected rights, not equitable rights." *Timely*, 507 F.3d at 1129. "State law determines the nature of a claimant's interest in forfeited property." *Henry*, 621 F. App'x at 972 (citing *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008), which applied state law to determine the nature of a claimant's interest in forfeited property for § 853(n)(6)(A) merits purposes). However, a "[c]ourt only applies state law to determine a petitioner's interest in forfeited property *after* that petitioner establishes standing."

12

*Tardon*, 493 F. Supp. 3d at 1219 (citing *Shefton*, 548 F.3d at 1364) (emphasis added)); *United States v. Parenteau*, 647 F. App'x 593, 594 (6th Cir. 2016) (finding that the application of state law was not required as the claimant did not establish standing because claimant was not a party "other than the defendant" under § 853(n)(2)).

"Statutory standing is a horse of a different hue." *Catala*, 870 F.3d at 10. "[T]he term 'statutory standing' is a bit 'misleading,'" as "[s]tatutory standing is not really about standing at all, in the sense that it limits a 'court's statutory or constitutional *power* to adjudicate the case.'" *Emor*, 785 F.3d at 676-77 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (emphasis in original)). Rather, "statutory standing is nothing more than an inquiry into whether the statute at issue conferred a 'cause of action' encompassing 'a particular plaintiff's claim.'" *Id.* at 677 (citation omitted); *Catala*, 870 F.3d at 10 ("[Statutory standing] relates to whether the plaintiff has a cause of action under a particular statute."). That is, "statutory standing 'is itself a merits issue.'" *Id.* (quoting *United States v. Oregon*, 671 F.3d 484, 490 n.6 (4th Cir. 2012)). "Unlike Article III standing, . . . the existence of statutory standing is not a prerequisite to a court's power to adjudicate a case. Thus, an inquiring court may opt, in the interest of efficiency, to forgo an inquiry into statutory standing and reject a claim on the merits." *Catala*, 870 F.3d at 10.

### B. Petitioner's Claim

Upon review of the evidence in this case, the court concludes that the Petitioner was a mere nominee or "straw man" for the Defendant and therefore lacks Article III standing to claim the forfeited truck. The Petitioner testified that she went to the Torres's address to look at the truck before purchasing it and brought only the Defendant with her to inspect it. However, Agent Kroeger's and Ms. Torres's testimony contradicts the Petitioner's testimony. Ms. Torres testified that it was the Defendant and two other men, not the Petitioner, who initially came to the Torres's

13

house to look at the truck; that the Defendant told Ms. Torres that he had been looking for a work truck (not a truck for his sister); and that the Defendant and Ms. Torres agreed on a purchase price of $20,700. The next day, the Defendant and a woman, Helen Maynor, met Ms. Torres at Wells Fargo to purchase the truck, where the Defendant gave Ms. Torres $20,700 in cash and executed, along with Ms. Maynor, the promissory note drawn by Ms. Torres. The Defendant took possession of the truck that day and later returned in the truck to retrieve coupons and truck documents from Ms. Torres. Although the Petitioner later showed up to sign the title and the bill of sale, Ms. Torres testified that after the initial contact from the Petitioner, she dealt only with the Defendant regarding the sale of the truck. Throughout this course of dealings Ms. Torres believed that the Defendant was the one who was actually purchasing the truck.

Ms. Torres's testimony is corroborated by Agent Kroeger's testimony. According to Kroeger, the Defendant admitted to owning the truck, said that he paid approximately $20,000 in cash for it, and explained that he had the truck registered in the Petitioner's name because the paperwork was confusing to him and it was easier to register the truck in her name. Kroeger testified that the Defendant never represented that the truck was the Petitioner's or that he purchased it for her. Kroeger said that he had gained prior knowledge of the Defendant's purchase of the truck from an SOI who alerted him to the purchase before it occurred. The SOI was present when the Defendant first inspected the truck. The SOI told Kroeger that drug proceeds were going to be used to purchase the truck. Moreover, Kroeger testified that no documentation from criminal investigators showed that the Petitioner used the vehicle during the time in which she claimed that the truck was in her possession.

Agent Kroeger also testified that the majority of the criminal investigation was from March 2019 through November 2019. Kroeger could not provide specific dates, but he said that officers observed the Defendant on one occasion driving the truck to the Petitioner's apartment and picking

up a male who exited the apartment, and also observed the Defendant driving to a school where he picked up a juvenile. Neither Kroeger nor any of the other officers saw the Petitioner driving the truck. Kroeger also did not ever see the Petitioner's father drive the truck. Kroeger further testified that prior to September 2019, criminal investigators conducted controlled purchases with confidential sources and that the Defendant's truck was observed parked at his parents' residence, where Defendant also lived, during those controlled purchases. Lastly, Kroeger testified that he reviewed video evidence of the Defendant's showing drugs to a corroborating source on January 8, 2020 and removing the drugs either from the truck or from close proximity to the truck. The Defendant was the driver of the truck and was the one who unlocked the truck. The Court finds Ms. Torres and Agent Kroeger to be credible witnesses.

The court recognizes that Petitioner's name was on the bill of sale and title, and that she testified that she paid the insurance on the truck,[5] as well as giving approximately $1,000 to her father for the truck, and that only she and her then-boyfriend drove the truck while it was in her possession. However, the weight of the testimony, as cited *supra*, demonstrates that the Defendant was the true owner of the truck and that the Petitioner acted as nothing more than a nominee. Further, even if Article III standing were more forgiving and the Petitioner were able to meet her burden in establishing constitutional standing, for the reasons previously discussed the Petitioner does not have statutory standing because the Petitioner, as a nominee, cannot establish that she is a person "other than the defendant."

Although the Court need not address the substantive merits of the Petitioner's claim, given that the Petitioner lacks standing to challenge the forfeiture, *Masilotti*, 510 F. App'x at 810 n.2, the Petitioner's status as a nominee would necessarily preclude relief on the merits under 21 U.S.C. § 853(n)(6)(A). *See Henry*, 621 F. App'x at 972 ("[A] person found to be acting as a nominee for

---

[5] Petitioner did not present any documentary evidence verifying these insurance payments.

others whose property is subject to forfeiture cannot have a vested interest in the property.") (citing *Weiss*, 467 F.3d at 1303 n.1)); *Tardon*, 493 F. Supp. 3d at 1258 ("[A]lthough the Petitioners would also lack a superior interest under 21 U.S.C. § 853(n)(6)(A) on the merits of their purported claims to the vehicles, the Undersigned concludes that their claims should be rejected first for lack of standing, which is a threshold issue.").

The Petitioner would not fare any better under 21 U.S.C. § 853(n)(6)(B). "That provision exists only to protect subsequent purchasers of '*the defendant's interest*' in an asset." *United States v. Soreide*, 461 F.3d 1351, 1356 (11th Cir. 2006) (emphasis in original); *see also United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987) (interpreting the statute to reach "persons who [gave] value *to the defendant* in an arms'-length transaction with the expectation that they would receive equivalent value in return.") (emphasis added). The Petitioner does not contend that she purchased the Defendant's interest in the truck. Instead, she testified that her father financed her purchase of the truck from a third party seller. Thus, the Petitioner would not qualify as the type of bona fide purchaser that 21 U.S.C. § 853(n)(6)(B) protects. *Soreide*, 461 F.3d at 1356.

## V.   Conclusion

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the Petitioner's motion for the return of confiscated property (Doc. 203) be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before July 28, 2021. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the magistrate judge's report shall bar the party from a *de novo* determination by the District Court of

issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

    DONE, on this the 13th day of July, 2021.

                                             /s/ Susan Russ Walker
                                             Susan Russ Walker
                                             United States Magistrate Judge